IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>LEROY E. FRITTS and RODERICK ALYN PRESCOTT,<br><br>  Defendants.<br>                                                                        / | No. CR 05-00216 WHA<br><br>**ORDER GRANTING MOTION FOR TRANSFER** |

## INTRODUCTION

In this tax-evasion case, defendant Roderick Prescott has moved for his trial to be transferred for convenience to the District of Oregon. Leroy Fritts, the sole co-defendant, does not object to his case also being transferred. The balance of factors on the motion tips in favor of moving the case. The motion is **GRANTED**.

## STATEMENT

Mssrs. Prescott and Fritts allegedly ran two businesses, National Trust Services and Fountainhead Global Trust. Through National Trust Services the men supposedly sold advice and services to help clients avoid federal taxes. Fountainhead Global Trust purportedly sold offshore investments. The government claims that the National Trust Services scheme was to create trusts through which clients would hold assets and funnel income. Defendants are not charged, however, with any counts directly related to the possible unlawfulness of offering

these trust services. Instead, all of the charges against them relate to alleged evasion of their personal federal income taxes, conspiracy to do so and alleged witness tampering by Mr. Fritts.

In 1998 and 1999, defendants purportedly earned income through these businesses. They allegedly then sought to conceal it from the government via other trusts. Both men allegedly failed to file tax returns for 1998 and 1999, either for themselves or for their trusts, and to pay $333,098 in taxes, collectively. The tax evasion charges relate only to conduct in the Northern District of California. The government, however, accuses the men of conspiring to evade taxes both here and in other, unspecified, locations. The government accuses Mr. Fritts of furthering this conspiracy by drawing income, in June and July of 1999, from checks drawn on the National Trust Services account and payable to his wife, to a trust they created and to another trust controlled by Mr. Prescott and his wife, Karla. Mssrs. Fritts and Prescott are accused of causing their spouses to endorse those checks during that time.

Mr. Fritts allegedly sought to affect the testimony of Ms. Prescott, on July 20, 2004, in the Northern District of California and elsewhere, thus violating 18 U.S.C. 1512(b)(witness tampering).

The balance of facts relevant to the motion to transfer are described below because the transfer analysis is inherently fact-intensive.

**ANALYSIS**

Mr. Prescott's counsel argues that Federal Rule of Criminal Procedure 18 provides the court with authority to transfer this case to another district for convenience reasons. He misconstrues the rule. In fact, the rule's command that the "court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses" refers only to *intra*district — not *inter*district — transfers. *See, e.g., United States v. Scholl*, 166 F.3d 964, 969–70 (9th Cir. 1999) (transfer from Tucson, Ariz., to Phoenix, Ariz., both within District of Arizona). Mr. Prescott's motion to transfer venue from the Northern District of California to the District of Oregon on the authority of Rule 18 is therefore denied.

Upon a defendant's motion, however, criminal proceedings may be transferred to another district "for the convenience of the parties and witnesses and in the interest of justice"

2

under Federal Rule of Criminal Procedure 21(b). Factors to balance in deciding such a motion by a corporate defendant are: (1) location of the corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; and (9) docket conditions in each district involved. *Platt v. Minn. Min. & Mfg. Co.*, 376 U.S. 240, 243–44 (1964). These factors have been adapted to trials of individuals. *See, e.g.*, *United States v. Testa*, 548 F.2d 847, 856–57 (9th Cir. 1977). This analysis is more defendant-friendly than is the civil transfer rule under 28 U.S.C. 1404(a). For one, only the defendant can bring the motion whereas either side can bring it civilly. Second, there is no presumption in criminal cases in favor of the government's choice of forum. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (deference to plaintiff's choice in civil case).

*As to the first factor* (location of the defendant), Mr. Prescott's counsel stated at the hearing that his client lives in Orem, Utah, and this statement is consistent with the evidence. Mr. Prescott also can stay for free with his wife, Karla, in Selma, Oregon (Hansen Aff. ¶¶ 4, 7, Oct. 25, 2005; U.S. Supplemental Evid. Pursuant to Ct. Order, Exh. 2, Prescott Dep. 3, ll. 16–17). This order takes judicial notice of the facts that Orem is about 770 miles driving distance from San Francisco and about 800 miles driving distance from Portland, Oregon (the location of the nearest federal courthouse in that state). San Francisco is about 400 miles from Selma. San Francisco is the closest venue to Mr. Prescott's home in Utah. If he were to move to his wife's home, however, the closest federal courthouse would be in Oregon. There are three divisional offices in the District of Oregon, each with a courthouse: Portland, Eugene and Medford. The Medford courthouse does not have a federal district judge who works there on a regular basis. Normally, this would preclude any felony trial from being held there. On the Court's own motion, it has inquired of the District of Oregon whether a felony trial could be held in Medford. The answer is that, on occasion and in appropriate circumstances only, felony trials have been heard in the Medford courthouse. Medford is about fifty miles from Mr. Prescott's free accommodations in Selma. Applying Rule 18, it appears that the most

3

convenient place for a trial upon transfer to the District of Oregon would be Medford. Eugene is about 160 miles from Selma; Portland is 260 miles distant. Of course, the District of Oregon will decide where the case will be heard and this order does not purport to influence the eventual location of trial in Oregon.

Before this case, Mr. Fritts lived in Grants Pass, Oregon (Fermino Aff. 2). After his arrest, he was ordered released upon posting of a $200,000 bond and satisfaction of other conditions (Order Setting Release Conditions). No one has posted his bond since he was taken into federal custody on August 3, 2005 (*see* U.S. Attorney, Northern District of California, *Three Former Bay Area Men Arrested in Connection with Tax Scams*, at http://www.usdoj.gov/usao/can/press/html/2005_08_04_tax_release.html (Aug. 4, 2005) (arrested Aug. 3) (last viewed Dec. 5, 2005)). There is no reason to think that bond will be posted now. The location of his residence therefore is of little to no importance in this analysis. Wherever trial is held, Mr. Fritts probably will be in custody conveniently nearby.

Because Mr. Prescott could live conveniently near to the Medford courthouse but would be at least 400 miles from San Francisco whether he stays in Selma or in Orem, the trial location closest to his residence would be in Oregon. This factor therefore tips in favor of transfer.

*As to the second factor* (location of possible witnesses), there are 20 potential defense witnesses in Oregon. These include attorneys who worked with defendants, employees of defendants' businesses and witnesses to allegedly unlawful actions by Mr. Fritts (Hansen Aff. ¶ 6, Oct. 25, 2005; Hansen Aff. ¶ 2, Dec.1, 2005, Exh. A; Fermino Aff. 2). The government itself lists eight potential witnesses living in Oregon. These are mostly the custodians of various records (U.S. Supplemental Evid. 2–3). Defendants do not list anyone in California (*see* Hansen Aff. ¶ 2, Dec.1, 2005, Exh. A). The government lists sixteen witnesses in California, one in Arizona and one in Utah. These include eight former clients of National Trust Services, three IRS agents who have worked on cases against defendants, the custodian of records at IRS operations in Fresno and one Department of Justice attorney who litigated a civil case against

4

Mr. Prescott.  It is evident from other documents filed in this case that defendants had financial relationships, either directly or through their businesses, with people throughout the United States.  A list of 281 individuals and entities who purchased services through National Trust Services includes 117 listings for clients with addresses in California or Arizona, and twenty-four with addresses in the Pacific Northwest, Idaho or Montana.  Dozens more were scattered across the United States (U.S. Supplemental Evid. 2–3, Exh. 1, Brown Decl., Exh. H).  There is no suggestion by defendants or the government, however, that any of these people will have any involvement in this prosecution (excepting the ones named in the potential witness lists).

Most of the expected witnesses are in Oregon.  Not all witnesses, however, have equal value in this venue-transfer analysis.  IRS agents and the government attorney who are potential witnesses are effectively part of the prosecution team.  If they are still so employed, they will be paid for their inconvenience.  Furthermore, custodians of records sometimes are not called at trial because the parties stipulate to the authenticity of and foundation for the records.  Finally, although the government has claimed that the clients of Mssrs. Fritts and Prescott were cheated, it has not shown how they will have any significant connection to this case, which does not directly concern their businesses.  The witness count favors Oregon over California by a tally of 28 to 16, even before discounting for former clients, custodians of records and government employees.  This factor therefore weighs in favor of transfer.

*As to the third factor* (location of events likely to be in issue), there are events both in California and in Oregon.  Many of these events involve defendants allegedly earning income and hiding it from tax authorities.

Many relevant events occurred in California.  National Trust Services was based in San Jose or Foster City, and had a bank account in San Jose (Nat'l Trust Srvcs., Bank Resolution Minute, Brown Decl., Exh. D (San Jose headquarters); Prescott Dep. 28, ll. 5–10 (Foster City headquarters)).  The men held meetings at offices in San Jose to discuss the business (Dobberstein Decl.).  The declaration of trust was prepared by Mr. Fritts while he had an address in Foster City (Nat'l Trust Srvcs., Decl. of Trust at 1, Brown Decl., Exh. D).  The Trust

5

also had an account with the Bank of Santa Clara, which presumably was in California, although parties do not say so (Brown Decl. ¶ 40). The banks are important because much of defendants' income passed through them. Both men had the authority to write checks on the trust's bank account in San Jose. Mr. Prescott was authorized by the trust to borrow funds from the San Jose bank for and on behalf of the trust (Nat'l Trust Srvcs., Bank Resolution Minute). On May 1, 1995, defendants allegedly established Fountainhead Global Trust in San Jose. Both had signature authority on its bank account in Fremont (Dobberstein Decl.). In June and July of 1999, Mr. Fritts allegedly drew income from the National Trust Services' account.

The government claims that events at which defendants allegedly marketed their trust services were held "primarily" in California from 1993–98 and that "most of the events at issue occurred in California" (U.S. Supplemental Evid. 5–6). Of course, the only relevant years in this case for the tax evasion charges are from 1998 to the present. The conspiracy, though, is alleged to have begun in 1988 (Superceding Indictment 4). The marketing events are important because it is through them that defendants apparently earned much of their income. They may also demonstrate something about the ways they allegedly concealed their income.

Mr. Prescott claims that no such promotional events were in Northern California after June 1998 and that the "vast majority" of such events took place in Oregon. In fact, he says that "[f]rom 1998 to the end of 1999, [he] was located in Oregon and did everything in Oregon." He then moved to San Diego and stayed there until August 2002, when he moved to Utah (Hansen Aff. ¶ 3, Dec. 1, 2005; Hansen Aff. ¶¶ 3–4, Oct. 25, 2005). In Oregon, National Trust Services had accounts at two banks (U.S. Supplemental Evid. 2; Brown Decl. ¶ 40). Mr. Prescott claims that, because he lived in Oregon during that time, it is impossible that he evaded taxes in Northern California. There is no ground for that assertion, as even his actions in Oregon could have had effects here, such as by causing a check to be honored in an account here.

The record suggests that financial transactions occurred in both Oregon and California. So did the marketing events. Over the course of the entire conspiracy period, there is no clear center of gravity. Given that it seems most of the marketing events in 1998 and 1999 took place

in Oregon, most of defendants' income probably was earned there during the years for which defendants allegedly did not pay taxes. Nevertheless, defendants are only charged with tax evasion occurring in Northern California. There is no evidence on where the witness tampering happened. Overall, this factor seems evenly balanced.

*As to the fourth factor* (location of documents and records likely to be involved), there the Court is faced with dueling, largely unsupported claims. Counsel for Mr. Fritts claims that most of the documents are in Oregon. Clearly, there are documents in Oregon, including court records of litigation between defendants, bank papers and government documents (Fermino Decl. 2; Hansen Aff. ¶ 12, Oct. 25, 2005). The government claims that most records are in the Northern District of California, again including bank documents and IRS and other government records (U.S. Supplemental Evid. 2, 3, 6). This factor does not tip clearly either way.

*As to the fifth factor* (disruption of defendant's business unless the case is transferred), there is no evidence that either Mr. Prescott or Mr. Fritts has a business or a job. This factor therefore does not tip in favor of transfer.

*As to the sixth factor* (expense to the parties), defense counsel has stated that cost is the primary reason Mr. Prescott desires a transfer. Defendant states that transfer would be cheaper for him because he has a free place to stay for himself and his witnesses, and free office space for his attorney at his wife's home in Selma, Oregon. He also argues that transportation costs for his witnesses would be less in Oregon because most live there (Hansen Aff. ¶¶ 6–11). Counsel, who are in Las Vegas and San Francisco, would incur higher travel costs going to Oregon than to San Francisco. Counsel have not submitted anything but the most conclusory statements about the relative expense of accommodations in the various possible locations of trial. They are therefore disregarded. In the end, it appears that trial in Oregon would be significantly less expensive than trial in San Francisco. This factor therefore favors Oregon.

*As to the seventh factor* (location of counsel), Mr. Prescott's counsel is in Las Vegas and the prosecutors are in San Francisco. David W. Fermino, counsel for Mr. Fritts, is with the public defender's office here. If transfer is granted, however, Mr. Fritts almost certainly would

7

receive new counsel from the federal public defender's office in Oregon. In sum, counsel for two of the three parties would ordinarily find trial more convenient in San Francisco but Mr. Prescott's counsel is willing to be inconvenienced.

*As to the eighth and ninth factors* (relative accessibility of the place of trial and docket conditions in each district involved), there has been no valuable evidence submitted. These factors are therefore neutral.

In summary, only one of the factors favors keeping the trial here. It is location of counsel. That is a relatively unimportant factor in this case. Three factors favor transfer and they are all important: cost, location of witnesses and location of defendants. The other factors are neutral.

## CONCLUSION

The factors suggests that trial in the District of Oregon would be more convenient for the parties and for the witnesses, on balance, and would be in the interests of justice. The motion to transfer for convenience therefore is **GRANTED**. The Clerk shall certify the file and transfer this entire case to the District of Oregon. All other motions pending before this Court are therefore **DENIED** as moot. Counsel may be able to renew them in the District of Oregon.

**IT IS SO ORDERED.**

Dated: December 6, 2005

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE